JUSTICE KINSER,
with whom JUSTICE LACY and JUSTICE KOONTZ join, concurring in part and dissenting in part.
Because I conclude that the circuit court did not abuse its discretion in excluding evidence of other alleged similar incidents of sudden acceleration, I would affirm the circuit court’s judgment in favor of Ford Motor Company (Ford). I also believe that the court did not abuse its discretion by admitting the testimony of Robert Quinn Brackett, Jr., and that any error in granting the jury instruction on contributory negligence and refusing to instruct the jury on the issue of sudden emergency was harmless. Thus, I respectfully dissent in part and concur in part with the majority decision. I will address these specific issues and discuss additional facts where necessary.
I. JUDICIAL ADMISSION, THE UPDEGROVE REPORT, AND EVIDENCE OF OTHER SIMILAR INCIDENTS
The term “judicial admission” is defined as “[a] formal waiver of proof that relieves an opposing party from having to prove the admitted fact and bars the party who made the admission from disputing it.” Black’s Law Dictionary 49 (7th ed. 1999); see also Charles E. Friend, The Law of Evidence in Virginia § 18-37 (5th ed. 1999) (“ ‘Judicial admissions’ are concessions made by a party during the course of litigation which bind the party and prevent contrary evidence from being introduced.”). Thus, a party may admit certain facts at issue, thereby dispensing with the need for proof of the facts admitted and relieving the other party of proving those facts. See Eubank v. Spencer, 203 Va. 923, 925, 128 S.E.2d 299, 301 (1962). See also Pedersen v. Vahidy, 552 A.2d 419, 424 (Conn. 1989); Goldsmith v. Allied Bldg. Components, 833 S.W.2d 378, 380 (Ky. 1992); Clapp v. Clapp, 85 S.E.2d 153, 155 (N.C. 1954); State v. McWilliams, 352 S.E.2d 120, 127 (W. Va. 1986).
*265 We have held that “[t]he essence of a judicial admission is its conclusiveness.” General Motors Corp. v. Lupica, 237 Va. 516, 520, 379 S.E.2d 311, 314 (1989). This is so because such admissions are “made for the purpose of dispensing with the formal proof of some fact at the trial.” Virginia-Carolina Chem. Co. v. Knight, 106 Va. 674, 678, 56 S.E. 725, 727 (1907). Thus, “[t]o constitute a judicial admission, the admission must conclusively establish a fact in issue.” Lupica, 237 Va. at 520, 379 S.E.2d at 314. The admission may not then be controverted, “qualified, explained, or rebutted” by any other evidence. Id.
Unlike the majority, I believe that Ford’s admission conclusively established a fact in issue. Ford admitted that it had notice of other claims of sudden, unintended acceleration from operators of Ford vehicles. The admission was not indefinite or a matter of opinion, see Gunter v. Hamilton Bank of Upper East Tenn., 411 S.E.2d 115, 117 (Ga. Ct. App. 1991); Palmer v. Hobart Corp., 849 S.W.2d 135, 139-40 (Mo. Ct. App. 1993), but addressed a fact in issue with regard to Margaret Jones’ claim for negligent failure to warn. I agree with the majority that Ford did not admit that it had notice of a defect in the design of its electronic cruise control system. However, a judicial admission is an admission of a fact in issue. Lupica, 237 Va. at 520, 379 S.E.2d at 314. In contrast to the majority, I do not believe that a judicial admission is “incomplete and inconclusive” merely because it admits a fact in issue as opposed to an element necessary to establish a particular cause of action.
Since a judicial admission relieves the opposing party from having to prove the admitted fact, the relevant inquiry is whether further proof of that fact should be allowed. The admission of such evidence lies within a trial court’s discretion. McHenry v. United States, 276 F. 761, 766-67 (D.C. Cir. 1921); Piper v. Barber Transp. Co., 112 N.W.2d 329, 336 (S.D. 1961). A trial court may refuse to allow the introduction of additional evidence with regard to an admitted fact if such evidence would be cumulative, confusing to the jury, or would unnecessarily delay the proceedings. Hes v. Haviland Products Co., 148 N.W.2d 509, 512 (Mich. Ct. App. 1967). See also Walker v. Commonwealth, 258 Va. 54, 68, 515 S.E.2d 565, 573 (1999), cert. denied, 528 U.S. 1125 (2000) (within trial court’s discretion to exclude relevant evidence if its probative value is outweighed by danger of unfair prejudice). However, a party should not be permitted to preclude the introduction of otherwise admissible evidence by judicially admitting something less than what the evidence would *266 show. Cf. Spencer v. Commonwealth, 240 Va. 78, 91, 393 S.E.2d 609, 617, cert. denied, 498 U.S. 908 (1990) (“a defendant may not preclude the introduction of otherwise admissible evidence by an offer to stipulate less than the evidence would show”).
After Ford made its judicial admission, the circuit court concluded that introduction of the deposition evidence pertaining to other incidents of sudden acceleration and the Updegrove Report would have raised collateral issues and caused unnecessary delay in the trial. I agree. Thus, I conclude that the circuit court did not abuse its discretion in this case unless the excluded evidence was, otherwise, admissible and established facts outside the scope of Ford’s judicial admission, that is, if Ford admitted something less than what the proffered evidence would have shown. See Spencer, 240 Va. at 91, 393 S.E.2d at 617. Even if the majority were correct that Ford’s judicial admission was illusory, the pertinent inquiry is the same: whether the Updegrove Report and the deposition testimony of other similar incidents of sudden acceleration were admissible. I turn now to that question.
Jones sought to introduce the Updegrove Report and the deposition testimony describing other sudden acceleration incidents in order to establish that Ford knew or had reason to know that the electronic cruise control system installed in its 1991 Lincoln Town Car was or was likely to be dangerous for the use for which it was sold. See Featherall v. Firestone Tire & Rubber Co., 219 Va. 949, 962, 252 S.E.2d 358, 366 (1979). This Court has stated on numerous occasions that “[ejvidence of other similar accidents or occurrences, when relevant, is admissible to show that the defendant had notice and actual knowledge of a defective condition; ... [if the prior] occurrences happened . . . under substantially the same circumstances, and had been caused by the same or similar defects and dangers as those in issue . . . .” Spurlin v. Richardson, 203 Va. 984, 989, 128 S.E.2d 273, 277 (1962) (citations omitted); accord Owens-Corning Fiberglas Corp. v. Watson, 243 Va. 128, 137, 413 S.E.2d 630, 635 (1992); Ford Motor Co. v. Phelps, 239 Va. 272, 276-77, 389 S.E.2d 454, 457 (1990); Lupica, 237 Va. at 521, 379 S.E.2d at 314; Roll ‘R’ Way Rinks v. Smith, 218 Va. 321, 325, 237 S.E.2d 157, 160 (1977). “[T]he test of admissibility is . . . substantial similarity.” Roll ‘R’ Way Rinks, 218 Va. at 325, 237 S.E.2d at 160. “If the place, the circumstances, and the defect associated with a prior accident are substantially the same as those in issue, evidence of that accident is admissible to show notice of the existence of the defect and notice of *267 its dangerous potential.” Id. at 325-26, 237 S.E.2d at 160 (emphasis added). Thus, substantial similarity requires, in part, that the other incidents be “caused by the same or similar defects and dangers as those in issue.” Spurlin, 203 Va. at 989, 128 S.E.2d at 277.
This particular prerequisite for the admissibility of evidence of other occurrences is evident from our cases. In Lupica, we examined evidence of similar incidents and noted that most of the exhibits met the test of substantial similarity because they contained “statements of occurrences where the power steering on a General Motors automobile manufactured between 1964 and 1978 malfunctioned due to particulate in the system that caused the automobile to ‘self-steer’ and to go out of control.” 237 Va. at 521, 379 S.E.2d at 314. For example, in one of the exhibits, which was an internal General Motors memorandum that this Court found was properly admitted into evidence, a senior project engineer for General Motors stated that examination of the power steering gear from the vehicle in question showed that “some foreign material had passed thru [sic] the valve.”[1] That defect was the same as the plaintiffs had alleged was present in the vehicle owned by Lupica. Id. at 518-19, 379 S.E.2d at 312-13. In contrast, we concluded that another proffered exhibit failed the test of substantial similarity because it contained specific documentation that “ ‘disassembly and inspection of the power steering gearbox revealed no defects due to materials or workmanship that could have been responsible in any way for [the] owner’s accident.’ ” Id. at 522, 379 S.E.2d at 315. The significance of these examples is that the only exhibits that satisfied the test of substantial similarity were those that unequivocally established the nature of the defect and that it was the same defect as the one at issue.
Our decision in Lupica was consistent with our prior decisions regarding the admissibility of evidence of similar incidents. For example, in Spurlin, “none of the four prior occurrences [allegedly similar to the one at issue] was shown to have been caused by defective brakes, [the defect alleged by the plaintiff], and thus [the incidents] could not have charged the defendants with notice and actual knowledge of a defective condition.” 203 Va. at 989-90, 128 S.E.2d at 278. Hence, we concluded that the trial court did not err in “excluding such collateral evidence which could only have confused the issues and misled the jury.” Id. at 990, 128 S.E.2d at 278.
*268 Such substantial similarity, specifically, that the other events of sudden acceleration were caused by the same or similar defect as the one at issue, was not demonstrated in this case with respect to either the Updegrove Report or the deposition testimony. Although the majority makes the conclusory statement that “the record . . . contains evidence” that the sudden acceleration events described in the deposition testimony were “caused by the same or similar defects and dangers as those in [Jones’] case[,]” the majority fails to point to any testimony in those depositions that actually supports that conclusion or even discusses the cause of those acceleration events.[2] Instead, the majority relies on the testimony of Victor Joseph DeClercq and Samuel K. Sero (stating that the speed of a vehicle can be controlled only by use of the cruise control or application of the accelerator pedal) to infer that “the depositions contain evidence of a defect in the manufactured automobile.”
Even if I were to accept that inference, which I am not willing to do, we still would not know the nature of the alleged defect in those vehicles, nor could we without additional information. This is so because the deposition testimony raised questions about the condition of those vehicles and other possible mechanical or electrical problems. Two of the deponents acknowledged that some vehicles used by the United States Secret Service are modified in some respects, but they did not know what, if any, modifications had been made to their respective vehicles prior to the sudden acceleration events described by them. Another deponent testified that, after the sudden acceleration incident, he received a dealer’s invoice stating that the brakes had been fixed on the vehicle. And the state trooper stated that he had experienced electrical problems involving the air conditioner, power windows, and radio in his vehicle prior to the sudden acceleration event.
This Court has never before allowed evidence of similar incidents to be admitted when that evidence did not unequivocally satisfy the test of substantial similarity. The reasons for our long-standing position are obvious. When evidence of similar incidents does not cate *269 gorically demonstrate that those occurrences were caused by the same or a substantially similar defect as the one in issue, the parties will undoubtedly then present evidence with regard to the cause of each of those other incidents during the course of the main trial, thus diverting the jury’s attention to collateral issues. This diversion serves only to confuse the issues for the jury and to delay the proceedings. In other words, the jury would be plunged into multiple mini-trials. Thus, I conclude that the majority’s holding that the deposition testimony satisfies the test of substantial similarity is not consistent with our decision in Lupica.
The majority, however, reached a different conclusion with regard to the Updegrove Report. There, the majority stated that “[t]here is simply no evidence that the . . . claims mentioned in the Updegrove Study occurred under substantially the same circumstances as the plaintiff’s incident and had been caused by the same or similar defects and dangers as those in the plaintiff’s case.” While I agree that the Updegrove Report is not admissible because that report does not document whether those sudden acceleration incidents were caused by the same defect as that alleged by Jones, I must point out that the vast majority of the incidents described in the Updegrove Report occurred upon gear engagement, when the transmission was shifted from the park position to either drive or reverse. Thus, those sudden acceleration incidents, like those described in the deposition testimony, occurred under substantially the same circumstances as did Jones’ sudden acceleration event. Yet the majority is not willing to use DeClercq’s and Sero’s testimony in the same manner with regard to the Updegrove Report as it does with respect to the deposition testimony. However, for the purpose of determining whether either the Updegrove Report or the deposition testimony satisfies the test of substantial similarity, there is no practical difference between the. two items of evidence. They may differ in other respects, but those differences have no bearing on whether the test of substantial similarity is satisfied. Thus, in my view, the majority’s treatment of those items of evidence is inconsistent.
I also believe that the effect of the majority’s decision to require admission of the deposition testimony is to allow evidence of similar incidents to be used as proof of the defect or “corroboration.” Phelps, 239 Va. at 276, 389 S.E.2d at 457. As I have already noted, the majority is drawing inferences from evidence pertaining to the cause of Jones’ accident to establish the defect or the cause of the sudden acceleration events described in the deposition testimony. By *270 proving the defect in those occurrences in that manner, the majority is, in the final analysis but without acknowledging that it is doing so, using those depositions along with the same inferences to establish the defect in Jones’ vehicle. Yet this Court has explicitly stated that evidence of similar incidents cannot be used as proof of the defect. See id.
Thus, I conclude that neither the deposition testimony nor the Updegrove Report satisfies the test of substantial similarity, and therefore, neither was admissible as evidence of similar incidents relevant to the issue of notice, irrespective of Ford’s judicial admission. Admittedly, Jones was not allowed to introduce evidence that she considered vital to her case, but I cannot say that the circuit court abused its discretion.[3]
The majority also concludes that the deposition testimony was admissible to contradict DeClercq’s statement that Jones’ vehicle could not have suddenly accelerated other than by her application of the accelerator. Jones presents the question of using the evidence of similar incidents to impeach the credibility of DeClercq under her third assignment of error, which states:
The trial court erred in not permitting the plaintiff to cross-examine the defense expert witness (DeClercq) to show that sudden acceleration incidents, in a stationary vehicle, upon shifting to reverse or drive, and accompanied by a driver’s ineffective attempt at braking, coincided with the introduction of the electronic cruise control; and further erred in limiting cross examination based on the attorney work product doctrine.
I do not believe that this assignment of error fairly includes the issue decided by the majority.
Notwithstanding that problem, this use of the deposition testimony amounts to evidence of similar incidents being utilized to corroborate Jones’ testimony about the cause of her vehicle’s sudden acceleration. However, this Court has stated that, even when substantial similarity is demonstrated, evidence of similar incidents is not admissible as corroboration. Phelps, 239 Va. at 276, 389 S.E.2d at 457. Nor can such evidence be used to prove causation at the time of *271 Jones’ accident. See Roll ‘R’ Way Rinks, 218 Va. at 327, 237 S.E.2d at 161.
II. TESTIMONY OF FORD EXPERT WITNESS BRACKETT
Unlike the majority, I believe that Jones’ objection to the testimony of Robert Quinn Brackett, Jr., was sufficient. However, I find no error in the circuit court’s admission of that testimony.
On appeal, Jones challenges the admission of Brackett’s testimony on two grounds. Relying on this Court’s decision in Keesee v. Donigan, 259 Va. 157, 524 S.E.2d 645 (2000), she first claims that there was no foundation to establish that the circumstances of the test in which three of roughly one hundred subjects misapplied the accelerator pedal were substantially similar to the events confronting Jones. However, I conclude that Jones has waived this argument because she elicited much of the evidence about which she now complains. See Combs v. Norfolk & Western Ry. Co., 256 Va. 490, 499, 507 S.E.2d 355, 360 (1998); Hubbard v. Commonwealth, 243 Va. 1, 9, 413 S.E.2d 875, 879 (1992).
In her second challenge to Brackett’s testimony, Jones asserts that he testified as to “hearsay matters of opinion upon which [he] relied in reaching his own opinion.” McMunn v. Tatum, 237 Va. 558, 566, 379 S.E.2d 908, 912 (1989). Jones references the following response by Brackett when asked if he had an opinion whether Jones may have mistakenly applied the accelerator pedal:
Basically based on the information that I reviewed and the - the absence of evidence of any electrical or mechanical malfunction, based on the examination by both parties of the vehicle after the accident and no recognition or no evidence of brake failure after the accident, I concluded in addition with my experience that a brake accelerator pedal misapplication was highly likely.
Also, Brackett acknowledged that his understanding that there was no physical evidence of mechanical or electrical malfunction was based on the opinions of other experts in this case.
In making this argument, Jones ignores the fact that the opinions about which Brackett testified in explaining his own opinion were those of other experts who testified in this case. In fact, Sero did not dispute that there was no physical evidence found after the accident indicative of mechanical or electrical malfunction, or brake failure. *272 Thus, unlike the expert in McMunn, Brackett testified as to opinions of experts “whose qualifications [were] established to the satisfaction of the court, whose demeanor[s were] observed by the trier of fact, and whose pronouncements [were not] immune from cross-examination.” Id.
III. CONTRIBUTORY NEGLIGENCE AND SUDDEN EMERGENCY INSTRUCTIONS
The majority’s discussion of the contributory negligence and sudden emergency instructions is dicta. The propriety of any given jury instruction depends upon the evidentiary record developed at trial, because “[j]ury instructions must be supported by at least some evidence.” Cofield v. Nuckles, 239 Va. 186, 191, 387 S.E.2d 493, 496 (1990) (citing Van Buren v. Simmons, 235 Va. 46, 51, 365 S.E.2d 746, 749 (1988)). However, because the remand of this case is based upon reversal of some of the circuit court’s evidentiary rulings, we cannot know what the evidence will be upon retrial. Thus, we do not know at this time whether instructions on contributory negligence and sudden emergency will be warranted at the new trial.
Nevertheless, I agree with Ford’s argument that any error in granting the instruction on contributory negligence and refusing to instruct the jury on the doctrine of sudden emergency was harmless. The verdict form shows that the jury found in favor of Ford on both the claims for negligent design and negligent failure to warn. Thus, the jury did not reach the question of Jones’ contributory negligence. Indeed, the jury left the space for the answer to that question blank on the verdict form. Because the jury did not consider the issue of Jones’ potential contributory negligence, it was not necessary for the jury to consider whether she may have been confronted with a sudden emergency which would have excused her alleged contributory negligence. Thus, I conclude that any error, both in instructing on contributory negligence and in refusing to instruct the jury on sudden emergency, was harmless.
For these reasons, I dissent with regard to that part of the majority opinion allowing the introduction of the deposition testimony and with respect to the majority’s conclusions regarding the contributory negligence and sudden emergency instructions. I concur as to the issue concerning the testimony of Brackett and conclude that the circuit court did not err in admitting that testimony. Finally, I agree with the majority opinion on any issues that I have not separately addressed.
Thus, I would affirm the judgment of the circuit court.

 This particular memorandum was not specifically addressed in our opinion in Lupica, but it was included in the joint appendix, p. 682, filed with the appeal in that case.

 The majority also states that “Ford does not argue in its brief that the plaintiff failed to demonstrate that the events of sudden acceleration described by these [deposition] witnesses fail the test of substantial similarity[.]” However, on brief, Ford stated, “[T]he proffered evidence of other sudden acceleration incidents does not demonstrate that there was a defective condition in the vehicles involved in those claims. Unlike . . . Lupica, Ford does not concede, nor has it ever been proven, that any of these collateral events in question were caused by an electronic malfunction in the cruise control system of the vehicle at issue.”

 Although the majority concludes that the deposition testimony is admissible upon retrial, I note that the circuit court never ruled on Jones’ motion for permission to use those depositions at trial in lieu of live testimony from those individuals.