COURT OF APPEALS OF VIRGINIA


Present:  Judges Benton, Elder and Bumgardner
Argued at Salem, Virginia


SYLVESTER LEO GUY

                                    MEMORANDUM OPINION[*] BY
v.    Record No. 0198-01-3         JUDGE LARRY G. ELDER
                                         JANUARY 8, 2002
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF HALIFAX COUNTY
                   William L. Wellons, Judge

          Albert L. Shaw for appellant.

          H. Elizabeth Shaffer, Assistant Attorney
          General (Randolph A. Beales, Attorney
          General, on brief), for appellee.


     Sylvester Leo Guy (appellant) appeals from his bench trial

conviction for driving while intoxicated, his third such offense

in ten years.  On appeal, he contends the Commonwealth failed to

lay a sufficient foundation for the admission of hospital

records showing his blood alcohol concentration.  We hold the

records were admissible under the Shopbook Rule, and we affirm

appellant's conviction.[1]

---

     * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

     [1] The Commonwealth offered expert testimony to establish the
effect of appellant's blood alcohol concentration on his ability
to drive and did not rely on the statutory presumption of
intoxication.  On appeal, appellant challenges only the
admissibility of the test result and not the sufficiency of the
evidence to prove he was intoxicated.

"On factual issues relating to the admissibility of evidence, the burden of persuasion is proof by a preponderance of the evidence."  Rabeiro v. Commonwealth, 10 Va. App. 61, 64-65, 389 S.E.2d 731, 733 (1990).  "The admissibility of evidence is within the broad discretion of the trial court, and a ruling will not be disturbed on appeal in the absence of an abuse of discretion."  Blain v. Commonwealth, 7 Va. App. 10, 16, 371 S.E.2d 838, 842 (1988).

"Under the modern Shopbook Rule, . . . verified regular entries may be admitted in evidence without requiring proof from the original observers or record keepers."  Ford Motor Co. v. Phelps, 239 Va. 272, 275, 389 S.E.2d 454, 457 (1990).  Pursuant to this rule,

> practical necessity requires the admission
> of written factual evidence based on
> considerations other than the personal
> knowledge of the recorder, provided there is
> a circumstantial guarantee of
> trustworthiness. . . .  The trustworthiness
> or reliability of the records is guaranteed
> by the regularity of their preparation and
> the fact that the records are relied upon in
> the transaction of business by the person[s]
> . . . for [whom] they are kept.

"Automatic" Sprinkler Corp. of America v. Coley & Peterson, Inc., 219 Va. 781, 792-93, 250 S.E.2d 765, 773 (1979).

Thus, "an entry made by one person in the regular course of business, recording an oral or written report made to that person by others in the regular course of business, of a transaction within the personal knowledge of such latter persons

-

is admissible" if verified by the testimony of (1) the person making the entry, (2) a superior, Phelps, 239 Va. at 276, 389 S.E.2d at 457, or (3) some other person with official "access to [the] records" and "knowledge of how the . . . records were maintained in the ordinary course of . . . business," Sparks v. Commonwealth, 24 Va. App. 279, 283-84, 482 S.E.2d 69, 71 (1997).

Here, the evidence, viewed in the light most favorable to the Commonwealth, supported the trial court's ruling that Cecelia Owen was a person with official access to appellant's hospital records and knowledge that the records were maintained in the ordinary course of the hospital's business. Owen was the manager of health information on medical records for Halifax Regional Hospital, and as part of her official duties, "in the regular course of business," she maintained "the official hospital records" of each patient's course of treatment. She identified Commonwealth's Exhibit 9 as a true copy of the medical records showing treatment rendered appellant on August 29, 1999. She confirmed that the records were "generated while the treatment [was] actually progressing" by "the people that actually render[ed] the care."

Because the evidence proved that "the document[s] came from the proper custodian, . . . [were] record[s] kept in the ordinary course of business, . . . [were] made contemporaneously with the event by persons having the duty to keep a true record, and . . . [were] relied upon by those for whom [they were]

-

prepared," it provided a "sufficient foundation for admission of the [records] into evidence."  Avocet Dev. Corp. v. McLean Bank, 234 Va. 658, 667, 364 S.E.2d 757, 762 (1988).  Contrary to the assertions of appellant and the dissent, the Shopbook Rule did not require that Owen have personal knowledge of the procedures hospital staff followed in taking or analyzing appellant's blood.  It required only that she had knowledge of the procedures for maintaining the records themselves.  The Rule also did not require that Owen be able to identify the person who made the entry.  See id.; Charles E. Friend, The Law of Evidence in Virginia § 18-15, at 688 (5th ed. 1999) ("[A] business record that otherwise satisfies the [shopbook] rule's requirements is admissible even though the entrant's identity is unknown.").  Owen's lack of personal knowledge regarding the hospital lab's procedures for taking and analyzing blood and the identity of the person who made the entry "'affect[ed] . . . not their admissibility . . . but their credibility.'"  Sparks, 24 Va. App. at 283, 482 S.E.2d at 71 (quoting French v. Virginian Ry. Co., 121 Va. 383, 387, 93 S.E. 585, 586 (1917)).

Thus, we hold the trial court did not abuse its discretion in admitting into evidence verified hospital records indicating appellant's blood alcohol content shortly after his automobile accident, and we affirm appellant's conviction.

Affirmed.

-

Benton, J., dissenting.

The issue of the admissibility of the hospital's medical record is governed by the following principles:

> Under the modern Shopbook Rule, adopted in Virginia as a recognized exception to the hearsay rule, verified regular entries may be admitted in evidence without requiring proof from the original observers or record keepers. Generally, this exception has been restricted to facts or events within the personal knowledge and observation of the recorder to which the recorder could testify if called as a witness. But the general application of the exception is not all-inclusive. We have approved a qualification to the principle and have held that an entry made by one person in the regular course of business, recording an oral or written report made to that person by others in the regular course of business, of a transaction within the personal knowledge of such latter persons is admissible. The entry must be verified by testimony of the former person, or of a superior who testifies to the regular course of business.

Ford Motor Co. v. Phelps, 239 Va. 272, 275-76, 389 S.E.2d 454, 457 (1990) (citation omitted) (emphasis added).

The Supreme Court has emphasized that the Shopbook Rule "deals with records made, and not merely kept, in the regular course of business." Id. at 276, 389 S.E.2d at 457. This limitation flows from the principle that "[t]he trustworthiness or reliability of the records is guaranteed by the regularity of their preparation and the fact that the records are relied upon in the transaction of business by the person or entities for

-

which they are kept."  "Automatic" Sprinkler Corp. v. Coley & Peterson, 219 Va. 781, 793, 250 S.E.2d 765, 773 (1979) (emphasis added).  Therefore, to establish the admissibility of records under the Rule, the evidence must prove more than that records are kept in the ordinary course of business.

After the Commonwealth offered the hospital record as evidence, Guy's attorney objected to its admission.  The trial judge then permitted Guy's attorney to voir dire the testimonial sponsor of the medical record.  On voir dire, she testified as follows:

> Q  Do you have any idea who made these entries?
>
> A  The --
>
> Q  Any of them?
>
> A  Other than reading the names, no.
>
> Q  You don't know that the person who actually made the observation of anything like ethanol or anything else, you don't know whether that person is the person that made the entry onto the form, the lab tech, the doctor, the nurse, you have no idea who wrote these things down?
>
> A  All I can do is go by the document.  I was not there.

Before the trial judge admitted the record in evidence, the witness further testified as follows:

> Q  You don't know who wrote anything on this paper, on the record?
>
> A  Other than reading the signature, no.
>
> Q  You didn't see anybody do it?

-

A  No.

Q  Okay.  All right.  And your job is strictly maintenance of the records?

A  Yes, sir.

Q  Is that correct?

A  Yes.

Q  All right.

        *    *    *    *    *    *    *

Q  Whose signature appears or name appears on the blood test results?

A  I don't believe there's a name on it. It's a code number in the computer system.

Q  And do you recognize that name or number?

A  No, I do not.  I do not have access to that information.

Q  I see.  And is there a code number on it.

A  Yes.  There is a code number and initials of the person who knows, that would be maintained by the lab.

Q  All right.

        *    *    *    *    *    *    *

Q  What is that code number?  Actually the number doesn't matter to me.  You keep track of these things by code number?

A  Not in all cases, but I don't know how the lab does it.  Apparently that's the way they do it.

Q  You are not sure how the lab works?

A  No.

-

          Q  Is there a set of initials on the
          document that you have that would indicate
          who's responsible for any of this stuff, or
          you just don't know?  Do you know what those
          initials would mean?

          A  No.

     The deficiency in the foundation for admitting the evidence

is clearly established by this testimony.  The testimony

establishes only that this is a record the witness kept in her

employment.  She did not know who made the entries, did not

recognize the code or the meaning of the code on the record, and

did not know the procedures of the laboratory where the record

was generated.  This is not a case in which "[t]he [record]

entry [was] verified by testimony of the . . . person [making

the entry], or of a superior who testifies to the regular course

of business."  Phelps, 239 Va. at 276, 389 S.E.2d at 457.  It

also is not a case such as Sparks v. Commonwealth, 24 Va. App.

279, 482 S.E.2d 69 (1997), where the issue was "whether the

bank's vice-president, who had general supervisory authority

over bank personnel but no direct supervision over the persons

responsible for preparing or maintaining the bank's records, was

a person who could authenticate the bank's records into

evidence."  Id. at 281, 482 S.E.2d at 70.  There, the bank's

vice-president testified extensively about the manner in which

the bank's records were prepared, maintained, and kept.  See id.

at 283-84, 482 S.E.2d at 71.

                              -

The testimony in this record fails to establish the foundation for admitting the record under the Shopbook Rule. Although the witness in this case was the manager of the records, unlike the witness in Sparks, she knew nothing about the procedures the other departments followed.  Her testimony was deficient regarding the procedures the hospital followed in the preparation or making of the records.  Her testimony merely established that the records are "kept," which is an insufficient foundation.  Phelps, 239 Va. at 276, 389 S.E.2d at 457.

The evidence fails to establish that the record admitted into evidence was "'made contemporaneously with the event by persons having the duty to keep a true record.'"  Frank Shop, Inc. v. Crown Cent. Petroleum Corp., 261 Va. 169, 175-76, 540 S.E.2d 897, 901 (2001) (citation omitted).  Citing Kent Sinclair, Joseph C. Kearfoot, Paul F. Sheridan, Edward J. Imwinkelreid, Virginia Evidentiary Foundations § 9.4(B) (1998), the Commonwealth agrees that it

> was required to establish: (1) the record was prepared by a person with a business relationship with the hospital; (2) the informant, i.e., the ultimate source of the report, had a business duty to report the information; (3) the informant had personal knowledge of the facts or events reported; (4) the written report was prepared contemporaneously with the facts or events; (5) it was a routine practice of the hospital to prepare such reports; (6) the report was reduced to written form; (7) the report was made in the regular course of

-

business; and (8) the entry was of an act,
transaction, occurrence, or event.

Its proof failed to do so.

For these reasons, I would hold that the Commonwealth

failed to establish a proper foundation for the admission of the

medical record under the Shopbook Rule.  Accordingly, I would

reverse the conviction.